FILED
2025 Sep-08 PM 01:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT A

ELECTRONICALLY FILED
8/4/2025 1:43 PM
01-CV-2025-903216.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
JACQUELINE ANDERSON SMITH, CLERK

**IN THE CIRCUIT COURT**
**FOR THE TENTH JUDICIAL CIRCUIT**
**JEFFERSON COUNTY, ALABAMA**

| | |
|---|---|
| **DANIEL ANTHONY NJIGHA;** | |
| **GERARDO G LUGO;** | |
| **DAVID LYKE;** | |
| **CHRISTOPHER P MADDEN;** | |
| **JAVIER ALEJANDRO MARTINEZ;** | |
| **PAUL EDWARD MASON;** | |
| **DAVID MATIAS;** | |
| **SCOTTY MCCRACKEN;** | **Civil Action No:_____** |
| **JOHN A MCDONALD;** | |
| **MATTHEW MCDONALD;** | **COMPLAINT AND JURY DEMAND** |
| **GARRY MCDOWELL;** | |
| **MARTHA MCDUFFIE;** | |
| **MARY MCKEE;** | |
| **LEROY MCKELVEY;** | |
| **KEVIN MCLEOD;** | |
| **KEYLA MCMAHON;** | |
| **MYA MCMILLON;** | |
| **DEBRA ANN MCNEFF;** | |
| **NICOLE MEEKINS;** | |
| **SARA MARIA MICHAUD;** | |
| **SCOT FRANCIS MILLER;** | |
| **SHERRI MILLER;** | |
| **STEWART LEE MILLER;** | |
| **MATTHEW L MITCHELL;** | |
| **SHENIKA N MOORE;** | |
| **JUSTIN T MOOTS;** | |
| **URIAN PATRICK MORALES;** | |
| **MICHAEL MORGAN;** | |
| **TIMOTHY J MORGAN;** | |
| **BENNY MULLINS;** | |
| **ANDREW MYERS;** | |
| **RAMON NAVARRO;** | |
| **STELLA Y NELSON;** | |
| **MARK NELSON;** | |
| **KARIN O'CONNOR;** | |
| **JOHN P O'BRIEN;** | |
| **THOMAS OSTRANDA;** | |
| **TERRY ANTHONY OVERTON;** | |
| **ROBERT OWENS II;** | |
| **GREGORY L PAIGE;** | |
| **RICHARD DEAN PARKER;** | |
| **BRITTNEY PARKER;** | |
| **MOTTIO PASCHAL;** | |
| **ANTHONY MICHAEL PELLICANO;** | |
| **DONNA PELT;** | |
| **BILLY HOWARD PENIX;** | |

**JOSE LOUIS PEREZ;**
**JOYCE PERNELL;**
**DANIELLE PETTYJOHN;**
**SHIRLEY MICHELLE PHILLIPS;**
**BRENDON MICHAEL PHILLIPS;**
**MARY ANN PIERSON;**
**GIOVANNI PINGITORE;**
**DANIEL PLONER;**
**CHRISTINE POLLARD;**
**NICHOLAS QUAVE;**
**LUCIA S QUIGTAR-HAMILTON;**
**ADAM G RABURN;**
**RAUL VINCENT RAMIREZ;**
**CLAY RANALLO;**
**KEITH HARVEY RAVENS;**
**DALLAS DARRYL REED;**
**JOHN REILLY;**
**JEFFREY LLOYD REISES;**
**STEVEN GUY RHODES;**
**RAE C RICHARDSON;**
**ROBERT A RICHARDSON III;**
**ETHAN WAYNE RIDDLE;**
**STEVEN ALFRED RILEY;**
**JOHN RILEY;**
**PETER RIOPEL;**
**AVERIE JAIDE ROBIDOUX;**
**ELTON ROBINSON;**
**JOSE LUIS RODRIGUEZ;**
**DAMION GLEN ROGERS;**
**NEWMAN WAYNE ROGERS;**
**JENNIFER MAGEE ROWLAND;**
**HUGO RUBIANO;**
**MISCHEL LEA RUSH;**
**MARCUS J SANDERS;**
**MICHAEL RAY SANDERS;**
**CHRISTINA ANN SCHULTZ;**
**SALLY SCHULZ;**
**STEPHEN L SCHUMAN;**
**JOHN E SCOTT;**
**ARLENE JUDY SELLARS;**
**AVON SELLERS SR;**
**REGINALD SERRANO;**
**LARRY SHANKLE;**
**KENNETH SHEPHERD;**
**MICHAEL SHOEMAKER;**
**THOMAS RAY SHOEMAKER;**
**CARLOS SILVA;**
**WELDON SIMMONS;**
**LEONARD SIMS;**
**AUSTIN SKALLA;**

**JOSHUA D SLATTERY;**
**TERRELL L SMITH;**
**WALTER ANTHONY SMITH;**
**RONALD SMITH;**
**NATHANIEL C SMITH;**
**DARRELL SNETHEN;**
**JAMES SNIVELY;**
**LASHANDA JEAN STALLING;**
**JOHN EDWARD STEIERT;**
**JEFFREY STEWART;**
**JACOB STEWART;**
**JASEY STINSON;**
**ROBERT L SUMMERS;**
**ROBYN BENITA SWINEY;**
**VICTORIA SWINK;**
**THOMAS P TAYLOR;**
**DUSTIN WILLIAM TAYLOR;**
**ELIZABETH LATRELLE THOMAS;**
**PAUL W THOMPSON JR;**
**JAQUAN MONSHAY THOMPSON;**
**AARON TIBBS;**
**ROBERT CHARLES TOGTMAN;**
**DARYL TOTH;**
**JOHN F TOWRY;**
**NATHAN TROY;**
**VAELUA TUPUOLA;**
**PHYLLIS TURNER;**
**JOSE R VALENTIN JR.;**
**MAX VANSICKLE;**
**PETER VEGA;**
**ASHLEY NICOLE VEGA;**
**KIM ALAN VENTURELLA;**
**RICHARD DAVID VITTUM;**
**KEITH WALLACE;**
**KAYLEE E. WALTER;**
**EMANUEL RASHAD WATERS;**
**VICTORIA WATSON;**
**JOHN WATTS;**
**DATHERN WEATHERBY;**
**CHRISTOPHER A WELLS;**
**JEREMIAH JACOB WERTZ;**
**ALVIN BRYAN WHISMAN;**
**DARRELL CORNELIUS WHITE;**
**ALBERT WIKTORKO;**
**EUGENE WILLIAMS;**
**KAYTRELL T WILLIAMS;**
**CHRISTOPHER WYAN WILSON;**
**DANIEL WILSON;**
**THOMAS WOODALL;**
**RDELL WORLDS JR.;**

**POPOTIA R WRIGHT;**
**STEVEN DOUGLAS WYRO;**
**JULIO YAPIAS;**
**ROLAND ZAMORA SR;**
**REGINO ZAVALA,**

**Plaintiffs,**

**v.**

**3M COMPANY (f/k/a Minnesota**
**Mining and Manufacturing Company);**
**AGC CHEMICALS AMERICAS INC.;**
**AMEREX CORPORATION;**
**ARCHROMA U.S. INC.;**
**ARKEMA, INC.;**
**BASF CORPORATION**
**BUCKEYE FIRE EQUIPMENT**
**COMPANY;**
**CARRIER GLOBAL CORPORATION;**
**CHEMDESIGN PRODUCTS, INC.;**
**CHEMGUARD, INC.;**
**CHEMICALS, INC.;**
**CHEMOURS COMPANY FC, LLC;**
**CHUBB FIRE, LTD;**
**CLARIANT CORP.;**
**CORTEVA, INC.;**
**DAIKIN AMERICA, INC.;**
**DEEPWATER CHEMICALS, INC.;**
**DU PONT DE NEMOURS INC. (f/k/a**
**DOWDUPONT INC.);**
**DYNAX CORPORATION;**
**E.I. DU PONT DE NEMOURS AND**
**COMPANY;**
**JOHNSON CONTROLS, INC.;**
**KIDDE PLC;**
**NATION FORD CHEMICAL**
**COMPANY;**
**NATIONAL FOAM, INC.;**
**PERIMETER SOLUTIONS, LP;**
**THE CHEMOURS COMPANY;**
**TYCO  FIRE PRODUCTS LP, as**
**successor-in-interest to The Ansul Company;**
**UNITED TECHNOLOGIES**
**CORPORATION;**
**UTC FIRE &    SECURITY AMERICAS**
**CORPORATION, INC. (f/k/a GE**
**Interlogix, Inc.),**

**Defendants.**

# COMPLAINT

COMES NOW, the Plaintiff, by and through undersigned counsel, and alleges upon information and belief as follows:

# INTRODUCTION

1.      Plaintiffs bring this action for damages for personal injury resulting from exposure to the toxic chemicals collectively known as per and polyfluoroalkyl substances ("PFAS"). PFAS includes, but is not limited to, perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS") and related chemicals including those that degrade to PFOA and/or PFOS.

2.      Defendants collectively designed, marketed, developed, manufactured, distributed, released, promoted, sold, and/or otherwise inappropriately disposed of PFAS chemicals with knowledge that it was highly toxic and bio persistent, which would expose plaintiffs to the risks associated with PFAS.

3.      PFAS binds to proteins in the blood of humans exposed to the material and remains and persists over long periods of time. Due to their unique chemical structure, PFAS accumulates in the blood and body of exposed individuals.

4.      PFAS are highly toxic and carcinogenic chemicals. Defendants knew, or should have known, that PFAS remain in the human body while presenting significant health risks to humans.

5.      Plaintiffs were unaware of the dangerous PFAS in their drinking water and unaware of the toxic nature of the Defendants' PFAS in general. Plaintiffs' consumption of PFAS from Defendants' contamination and inappropriate disposal caused Plaintiffs to develop the serious medical conditions and complications alleged herein.

6.      Through this action, Plaintiffs seek to recover compensatory and punitive damages arising

5

out of the permanent and significant damages sustained as a direct result of exposure to Defendants'
PFAS at various locations. Plaintiffs further seek injunctive, equitable, and declaratory relief arising from
the same.

## JURISIDICTION AND VENUE

7.      The Defendants are subject to the jurisdiction of this Court on the grounds that (a) one or more
of the Defendants is a foreign corporation whose principal place of business is located in the State of
Alabama; (b) one or more of the Defendants are foreign corporations that either are registered to conduct
business in the State of  Alabama and have actually transacted business in Alabama; and/or (c) one or
more of the Defendants is a domestic corporation native to the State of Alabama.

8.      Venue is proper pursuant to *Alabama Code Section 6-3-7* as significant events resulting in the
cause of action and subsequent injuries occurred in this county.

9.      Joinder of all parties is proper pursuant to Rule 20(a) of the *Alabama Rules of Civil Procedure*.
Defendants are permissively joined in this action because the exposure, injuries, and relief requested all
arise out of similar occurrences or transactions and questions of law and fact are common to all parties.

## PARTIES

10.     Plaintiff Daniel Anthony Njigha is a resident and citizen of Bessemer, Alabama. Plaintiff was
exposed to PFAS chemicals through drinking water both at home and at their place of work, due to
contamination on behalf of the defendants, and potential AFFF sources.

11.     Plaintiff Daniel Anthony Njigha was diagnosed with ulcerative colitis as a result of exposure to
Defendants' PFAS contamination.

12.      Plaintiff Gerardo G Lugo is a resident and citizen of San Antonio, Texas. Plaintiff was exposed
to PFAS chemicals through drinking water both at home and at their place of work, due to contamination

on behalf of the defendants, and potential AFFF sources.

13.    Plaintiff Gerardo G Lugo was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

14.    Plaintiff David Lyke is a resident and citizen of Cleveland, Ohio. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

15.    Plaintiff David Lyke was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

16.    Plaintiff Christopher P Madden is a resident and citizen of Pensacola, Florida. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

17.    Plaintiff Christopher P Madden was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

18.    Plaintiff Javier Alejandro Martinez is a resident and citizen of Fort Wayne, Indiana. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

19.    Plaintiff Javier Alejandro Martinez was diagnosed with testicular cancer as a result of exposure to Defendants' PFAS contamination.

20.    Plaintiff Paul Edward Mason is a resident and citizen of Belmont, New Hampshire. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

21.    Plaintiff Paul Edward Mason was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

22.    Plaintiff David Matias is a resident and citizen of Orange Park, Florida. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

23.    Plaintiff David Matias was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

24.    Plaintiff Scotty McCracken is a resident and citizen of Chillicothe, Missouri. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

25.    Plaintiff Scotty McCracken was diagnosed with testicular cancer as a result of exposure to Defendants' PFAS contamination.

26.    Plaintiff John A McDonald is a resident and citizen of Lithonia, Georgia. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

27.    Plaintiff John A McDonald was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

28.    Plaintiff Matthew McDonald is a resident and citizen of Stillwater, Oklahoma. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

29.    Plaintiff Matthew McDonald was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

30.     Plaintiff Garry McDowell is a resident and citizen of Bagdad, Kentucky. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

31.     Plaintiff Garry McDowell was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

32.     Plaintiff Martha McDuffie is a resident and citizen of Columbus, Georgia. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

33.     Plaintiff Martha McDuffie was diagnosed with thyroid disease as a result of exposure to Defendants' PFAS contamination.

34.     Plaintiff Mary McKee is a resident and citizen of Newtown Square, Pennsylvania. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

35.     Plaintiff Mary McKee was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

36.     Plaintiff Leroy McKelvey is a resident and citizen of New Bern, North Carolina. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

37.     Plaintiff Leroy McKelvey was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

38.     Plaintiff Kevin Mcleod is a resident and citizen of Londonderry, New Hampshire. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to

contamination on behalf of the defendants, and potential AFFF sources.

39.    Plaintiff Kevin Mcleod was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

40.    Plaintiff Keyla McMahon is a resident and citizen of Wesley Chapel, Florida. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

41.    Plaintiff Keyla McMahon was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

42.    Plaintiff Mya McMillon is a resident and citizen of Las Vegas, Nevada. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

43.    Plaintiff Mya McMillon was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

44.    Plaintiff Debra Ann McNeff is a resident and citizen of Santa Clara, Utah. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

45.    Plaintiff Debra Ann McNeff was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

46.    Plaintiff Nicole Meekins is a resident and citizen of Monroe, Virginia. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

47.    Plaintiff Nicole Meekins was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

48.    Plaintiff Sara Maria Michaud is a resident and citizen of Hiram, Georgia. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

49.    Plaintiff Sara Maria Michaud was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

50.    Plaintiff Scot Francis Miller is a resident and citizen of Green Bay, Wisconsin. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

51.    Plaintiff Scot Francis Miller was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

52.    Plaintiff Sherri Miller is a resident and citizen of Greenfield, Indiana. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

53.    Plaintiff Sherri Miller was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

54.    Plaintiff Stewart Lee Miller is a resident and citizen of Perryton, Texas. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

55.    Plaintiff Stewart Lee Miller was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

56.    Plaintiff Matthew L Mitchell is a resident and citizen of Corpus Christi, Texas. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

57.    Plaintiff Matthew L Mitchell was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

58.    Plaintiff Shenika N Moore is a resident and citizen of Huntersville, North Carolina. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

59.    Plaintiff Shenika N Moore was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

60.    Plaintiff Justin T Moots is a resident and citizen of Buckhannon, West Virginia. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

61.    Plaintiff Justin T Moots was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

62.    Plaintiff Urian Patrick Morales is a resident and citizen of San Antonio, Texas. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

63.    Plaintiff Urian Patrick Morales was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

64.    Plaintiff Michael Morgan is a resident and citizen of Fenton, Michigan. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination

on behalf of the defendants, and potential AFFF sources.

65.    Plaintiff Michael Morgan was diagnosed with testicular cancer as a result of exposure to Defendants' PFAS contamination.

66.    Plaintiff Timothy J Morgan is a resident and citizen of Houston, Texas. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

67.    Plaintiff Timothy J Morgan was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

68.    Plaintiff Benny Mullins is a resident and citizen of Rockwood, Tennessee. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

69.    Plaintiff Benny Mullins was diagnosed with thyroid disease as a result of exposure to Defendants' PFAS contamination.

70.    Plaintiff Andrew Myers is a resident and citizen of Citrus Heights, California. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

71.    Plaintiff Andrew Myers was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

72.    Plaintiff Ramon Navarro is a resident and citizen of San Antonio, Texas. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

73.    Plaintiff Ramon Navarro was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

74.    Plaintiff Stella Y Nelson is a resident and citizen of San Antonio, Texas. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

75.    Plaintiff Stella Y Nelson was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

76.    Plaintiff Mark Nelson is a resident and citizen of Huntsville, Ohio. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

77.    Plaintiff Mark Nelson was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

78.    Plaintiff Karin O'Connor is a resident and citizen of Elizabeth, Indiana. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

79.    Plaintiff Karin O'Connor was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

80.    Plaintiff John P O'Brien is a resident and citizen of Covington, Georgia. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

81.    Plaintiff John P O'Brien was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

82.     Plaintiff Thomas Ostranda is a resident and citizen of Peachtree City, Georgia. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

83.     Plaintiff Thomas Ostranda was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

84.     Plaintiff Terry Anthony Overton is a resident and citizen of Austin, Texas. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

85.     Plaintiff Terry Anthony Overton was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

86.     Plaintiff Robert Owens II is a resident and citizen of Vanceburg, Kentucky. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

87.     Plaintiff Robert Owens II was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

88.     Plaintiff Gregory L Paige is a resident and citizen of Adel, Georgia. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

89.     Plaintiff Gregory L Paige was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

90.     Plaintiff Richard Dean Parker is a resident and citizen of Saint Charles, Michigan. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to

contamination on behalf of the defendants, and potential AFFF sources.

91.    Plaintiff Richard Dean Parker was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

92.    Plaintiff Brittney Parker is a resident and citizen of Rocky Mount, North Carolina. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

93.    Plaintiff Brittney Parker was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

94.    Plaintiff Mottio Paschal is a resident and citizen of Rantoul, Illinois. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

95.    Plaintiff Mottio Paschal was diagnosed with testicular cancer as a result of exposure to Defendants' PFAS contamination.

96.    Plaintiff Anthony Michael Pellicano is a resident and citizen of Seffner, Florida. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

97.    Plaintiff Anthony Michael Pellicano was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

98.    Plaintiff Donna Pelt is a resident and citizen of Headrick, Oklahoma. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

99.    Plaintiff Donna Pelt was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

100.    Plaintiff Billy Howard Penix is a resident and citizen of The Villages, Florida. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

101.    Plaintiff Billy Howard Penix was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

102.    Plaintiff Jose Louis Perez is a resident and citizen of Avondale, Arizona. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

103.    Plaintiff Jose Louis Perez was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

104.    Plaintiff Joyce Pernell is a resident and citizen of Dillon, South Carolina. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

105.    Plaintiff Joyce Pernell was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

106.    Plaintiff Danielle PettyJohn is a resident and citizen of Lenexa, Kansas. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

107.    Plaintiff Danielle PettyJohn was diagnosed with thyroid disease as a result of exposure to Defendants' PFAS contamination.

108.     Plaintiff Shirley Michelle Phillips is a resident and citizen of Theodore, Alabama. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

109.     Plaintiff Shirley Michelle Phillips was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

110.     Plaintiff Brendon Michael Phillips is a resident and citizen of Savannah, Georgia. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

111.     Plaintiff Brendon Michael Phillips was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

112.     Plaintiff Mary Ann Pierson is a resident and citizen of Taylor, Michigan. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

113.     Plaintiff Mary Ann Pierson was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

114.     Plaintiff Giovanni Pingitore is a resident and citizen of Dyer, Indiana. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

115.     Plaintiff Giovanni Pingitore was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

116.     Plaintiff Daniel Ploner is a resident and citizen of Moreno Valley, California. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to

18

contamination on behalf of the defendants, and potential AFFF sources.

117.    Plaintiff Daniel Ploner was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

118.    Plaintiff Christine Pollard is a resident and citizen of Griffin, Georgia. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

119.    Plaintiff Christine Pollard was diagnosed with thyroid disease as a result of exposure to Defendants' PFAS contamination.

120.    Plaintiff Nicholas Quave is a resident and citizen of Diberville, Mississippi. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

121.    Plaintiff Nicholas Quave was diagnosed with testicular cancer as a result of exposure to Defendants' PFAS contamination.

122.    Plaintiff Lucia S Quigtar-Hamilton is a resident and citizen of El Paso, Texas. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

123.    Plaintiff Lucia S Quigtar-Hamilton was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

124.    Plaintiff Adam G Raburn is a resident and citizen of Cullman, Alabama. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

125.    Plaintiff Adam G Raburn was diagnosed with liver cancer as a result of exposure to Defendants' PFAS contamination.

126.    Plaintiff Raul Vincent Ramirez is a resident and citizen of Houston, Texas. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

127.    Plaintiff Raul Vincent Ramirez was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

128.    Plaintiff Clay Ranallo is a resident and citizen of Cunningham, Tennessee. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

129.    Plaintiff Clay Ranallo was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

130.    Plaintiff Keith Harvey Ravens is a resident and citizen of Land O Lakes, Florida. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

131.    Plaintiff Keith Harvey Ravens was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

132.    Plaintiff Dallas Darryl Reed is a resident and citizen of Cleveland, Ohio. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

133.    Plaintiff Dallas Darryl Reed was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

134.    Plaintiff John Reilly is a resident and citizen of Davenport, Iowa. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

135.    Plaintiff John Reilly was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

136.    Plaintiff Jeffrey Lloyd Reises is a resident and citizen of Bradenton, Florida. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

137.    Plaintiff Jeffrey Lloyd Reises was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

138.    Plaintiff Steven Guy Rhodes is a resident and citizen of Salem, Alabama. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

139.    Plaintiff Steven Guy Rhodes was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

140.    Plaintiff Rae C Richardson is a resident and citizen of Kingsport, Tennessee. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

141.    Plaintiff Rae C Richardson was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

142.    Plaintiff Robert A Richardson III is a resident and citizen of Mount Vernon, Washington. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work,

21

due to contamination on behalf of the defendants, and potential AFFF sources.

143.    Plaintiff Robert A Richardson III was diagnosed with thyroid disease as a result of exposure to Defendants' PFAS contamination.

144.    Plaintiff Ethan Wayne Riddle is a resident and citizen of Colorado Springs, Colorado. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

145.    Plaintiff Ethan Wayne Riddle was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

146.    Plaintiff Steven Alfred Riley is a resident and citizen of Middletown, Ohio. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

147.    Plaintiff Steven Alfred Riley was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

148.    Plaintiff John Riley is a resident and citizen of Tunnelton, West Virginia. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

149.    Plaintiff John Riley was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

150.    Plaintiff Peter Riopel is a resident and citizen of Fayetteville, North Carolina. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

151.    Plaintiff Peter Riopel was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

152.    Plaintiff Averie Jaide Robidoux is a resident and citizen of Cadiz, Kentucky. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

153.    Plaintiff Averie Jaide Robidoux was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

154.    Plaintiff Elton Robinson is a resident and citizen of Talladega, Alabama. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

155.    Plaintiff Elton Robinson was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

156.    Plaintiff Jose Luis Rodriguez is a resident and citizen of San Antonio, Texas. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

157.    Plaintiff Jose Luis Rodriguez was diagnosed with testicular cancer as a result of exposure to Defendants' PFAS contamination.

158.    Plaintiff Damion Glen Rogers is a resident and citizen of Fort Campbell, Kentucky. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

159.    Plaintiff Damion Glen Rogers was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

160.     Plaintiff Newman Wayne Rogers is a resident and citizen of Bardstown, Kentucky. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

161.     Plaintiff Newman Wayne Rogers was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

162.     Plaintiff Jennifer Magee Rowland is a resident and citizen of Upper Marlboro, Maryland. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

163.     Plaintiff Jennifer Magee Rowland was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

164.     Plaintiff Hugo Rubiano is a resident and citizen of Royse City, Texas. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

165.     Plaintiff Hugo Rubiano was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

166.     Plaintiff Mischel Lea Rush is a resident and citizen of Machesney Park, Illinois. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

167.     Plaintiff Mischel Lea Rush was diagnosed with liver cancer as a result of exposure to Defendants' PFAS contamination.

168.     Plaintiff Marcus J Sanders is a resident and citizen of Oak Lawn, Illinois. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination

on behalf of the defendants, and potential AFFF sources.

169.    Plaintiff Marcus J Sanders was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

170.    Plaintiff Michael Ray Sanders is a resident and citizen of Caruthersville, Missouri. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

171.    Plaintiff Michael Ray Sanders was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

172.    Plaintiff Christina Ann Schultz is a resident and citizen of Lake Worth, Florida. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

173.    Plaintiff Christina Ann Schultz was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

174.    Plaintiff Sally Schulz is a resident and citizen of Waianae, Hawaii. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

175.    Plaintiff Sally Schulz was diagnosed with thyroid disease as a result of exposure to Defendants' PFAS contamination.

176.    Plaintiff Stephen L Schuman is a resident and citizen of Port Saint Lucie, Florida. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

177.    Plaintiff Stephen L Schuman was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

178.    Plaintiff John E Scott is a resident and citizen of Newport News, Virginia. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

179.    Plaintiff John E Scott was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

180.    Plaintiff Arlene Judy Sellars is a resident and citizen of Anamosa, Iowa. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

181.    Plaintiff Arlene Judy Sellars was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

182.    Plaintiff Avon Sellers Sr is a resident and citizen of Killeen, Texas. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

183.    Plaintiff Avon Sellers Sr was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

184.    Plaintiff Reginald Serrano is a resident and citizen of Sonora, California. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

185.    Plaintiff Reginald Serrano was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

186.    Plaintiff Larry Shankle is a resident and citizen of Kingwood, Texas. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

187.    Plaintiff Larry Shankle was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

188.    Plaintiff Kenneth Shepherd is a resident and citizen of Albuquerque, New Mexico. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

189.    Plaintiff Kenneth Shepherd was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

190.    Plaintiff Michael Shoemaker is a resident and citizen of Osceola, Missouri. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

191.    Plaintiff Michael Shoemaker was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

192.    Plaintiff Thomas Ray Shoemaker is a resident and citizen of Monahans, Texas. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

193.    Plaintiff Thomas Ray Shoemaker was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

194.    Plaintiff Carlos Silva is a resident and citizen of Watsonville, California. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination

on behalf of the defendants, and potential AFFF sources.

195.    Plaintiff Carlos Silva was diagnosed with liver cancer as a result of exposure to Defendants'
PFAS contamination.

196.    Plaintiff Weldon Simmons is a resident and citizen of Fayetteville, North Carolina. Plaintiff was
exposed to PFAS chemicals through drinking water both at home and at their place of work, due to
contamination on behalf of the defendants, and potential AFFF sources.

197.    Plaintiff Weldon Simmons was diagnosed with kidney cancer as a result of exposure to
Defendants' PFAS contamination.

198.    Plaintiff Leonard Sims is a resident and citizen of San Bernardino, California. Plaintiff was
exposed to PFAS chemicals through drinking water both at home and at their place of work, due to
contamination on behalf of the defendants, and potential AFFF sources.

199.    Plaintiff Leonard Sims was diagnosed with kidney cancer as a result of exposure to Defendants'
PFAS contamination.

200.    Plaintiff Austin Skalla is a resident and citizen of Davenport, Iowa. Plaintiff was exposed to
PFAS chemicals through drinking water both at home and at their place of work, due to contamination
on behalf of the defendants, and potential AFFF sources.

201.    Plaintiff Austin Skalla was diagnosed with ulcerative colitis as a result of exposure to
Defendants' PFAS contamination.

202.    Plaintiff Joshua D Slattery is a resident and citizen of Platte City, Missouri. Plaintiff was
exposed to PFAS chemicals through drinking water both at home and at their place of work, due to
contamination on behalf of the defendants, and potential AFFF sources.

203.    Plaintiff Joshua D Slattery was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

204.    Plaintiff Terrell L Smith is a resident and citizen of Dumas, Arkansas. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

205.    Plaintiff Terrell L Smith was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

206.    Plaintiff Walter Anthony Smith is a resident and citizen of Muldrow, Oklahoma. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

207.    Plaintiff Walter Anthony Smith was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

208.    Plaintiff Ronald Smith is a resident and citizen of Hephzibah, Georgia. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

209.    Plaintiff Ronald Smith was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

210.    Plaintiff Nathaniel C Smith is a resident and citizen of South Holland, Illinois. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

211.    Plaintiff Nathaniel C Smith was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

212.    Plaintiff Darrell Snethen is a resident and citizen of De Pere, Wisconsin. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

213.    Plaintiff Darrell Snethen was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

214.    Plaintiff James Snively is a resident and citizen of Janesville, Wisconsin. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

215.    Plaintiff James Snively was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

216.    Plaintiff Lashanda Jean Stalling is a resident and citizen of San Bernardino, California. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

217.    Plaintiff Lashanda Jean Stalling was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

218.    Plaintiff John Edward Steiert is a resident and citizen of Osage, Iowa. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

219.    Plaintiff John Edward Steiert was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

220.    Plaintiff Jeffrey Stewart is a resident and citizen of Columbiana, Alabama. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination

on behalf of the defendants, and potential AFFF sources.

221.    Plaintiff Jeffrey Stewart was diagnosed with kidney cancer as a result of exposure to Defendants'
PFAS contamination.

222.    Plaintiff Jacob Stewart is a resident and citizen of West Monroe, Louisiana. Plaintiff was
exposed to PFAS chemicals through drinking water both at home and at their place of work, due to
contamination on behalf of the defendants, and potential AFFF sources.

223.    Plaintiff Jacob Stewart was diagnosed with thyroid cancer as a result of exposure to Defendants'
PFAS contamination.

224.    Plaintiff Jasey Stinson is a resident and citizen of Hartselle, Alabama. Plaintiff was exposed to
PFAS chemicals through drinking water both at home and at their place of work, due to contamination
on behalf of the defendants, and potential AFFF sources.

225.    Plaintiff Jasey Stinson was diagnosed with kidney cancer as a result of exposure to Defendants'
PFAS contamination.

226.    Plaintiff Robert L Summers is a resident and citizen of Tacoma, Washington. Plaintiff was
exposed to PFAS chemicals through drinking water both at home and at their place of work, due to
contamination on behalf of the defendants, and potential AFFF sources.

227.    Plaintiff Robert L Summers was diagnosed with kidney cancer as a result of exposure to
Defendants' PFAS contamination.

228.    Plaintiff Robyn Benita Swiney is a resident and citizen of San Antonio, Texas. Plaintiff was
exposed to PFAS chemicals through drinking water both at home and at their place of work, due to
contamination on behalf of the defendants, and potential AFFF sources.

229.    Plaintiff Robyn Benita Swiney was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

230.    Plaintiff Victoria Swink is a resident and citizen of Carson, Virginia. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

231.    Plaintiff Victoria Swink was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

232.    Plaintiff Thomas P Taylor is a resident and citizen of El Paso, Texas. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

233.    Plaintiff Thomas P Taylor was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

234.    Plaintiff Dustin William Taylor is a resident and citizen of Astoria, Oregon. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

235.    Plaintiff Dustin William Taylor was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

236.    Plaintiff Elizabeth Latrelle Thomas is a resident and citizen of Pooler, Georgia. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

237.    Plaintiff Elizabeth Latrelle Thomas was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

238.    Plaintiff Paul W Thompson Jr is a resident and citizen of Chillicothe, Ohio. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

239.    Plaintiff Paul W Thompson Jr was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

240.    Plaintiff Jaquan Monshay Thompson is a resident and citizen of Okolona, Mississippi. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

241.    Plaintiff Jaquan Monshay Thompson was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

242.    Plaintiff Aaron Tibbs is a resident and citizen of Springfield, Illinois. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

243.    Plaintiff Aaron Tibbs was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

244.    Plaintiff Robert Charles Togtman is a resident and citizen of Rockford, Michigan. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

245.    Plaintiff Robert Charles Togtman was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

246.    Plaintiff Daryl Toth is a resident and citizen of Weaver, Alabama. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination

on behalf of the defendants, and potential AFFF sources.

247.    Plaintiff Daryl Toth was diagnosed with liver cancer as a result of exposure to Defendants' PFAS contamination.

248.    Plaintiff John F Towry is a resident and citizen of Hoschton, Georgia. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

249.    Plaintiff John F Towry was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

250.    Plaintiff Nathan Troy is a resident and citizen of El Paso, Texas. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

251.    Plaintiff Nathan Troy was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

252.    Plaintiff Vaelua Tupuola is a resident and citizen of Manteca, California. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

253.    Plaintiff Vaelua Tupuola was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

254.    Plaintiff Phyllis Turner is a resident and citizen of Stockbridge, Georgia. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

255.    Plaintiff Phyllis Turner was diagnosed with thyroid disease as a result of exposure to Defendants' PFAS contamination.

256.    Plaintiff Jose R Valentin Jr. is a resident and citizen of Saint Hedwig, Texas. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

257.    Plaintiff Jose R Valentin Jr. was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

258.    Plaintiff Max Vansickle is a resident and citizen of Fort Belvoir, Virginia. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

259.    Plaintiff Max Vansickle was diagnosed with thyroid disease as a result of exposure to Defendants' PFAS contamination.

260.    Plaintiff Peter Vega is a resident and citizen of Tucson, Arizona. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

261.    Plaintiff Peter Vega was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

262.    Plaintiff Ashley Nicole Vega is a resident and citizen of Baraga, Michigan. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

263.    Plaintiff Ashley Nicole Vega was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

264.     Plaintiff Kim Alan Venturella is a resident and citizen of Metairie, Louisiana. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

265.     Plaintiff Kim Alan Venturella was diagnosed with liver cancer as a result of exposure to Defendants' PFAS contamination.

266.     Plaintiff Richard David Vittum is a resident and citizen of Greenville, Texas. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

267.     Plaintiff Richard David Vittum was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

268.     Plaintiff Keith Wallace is a resident and citizen of Baton Rouge, Louisiana. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

269.     Plaintiff Keith Wallace was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

270.     Plaintiff Kaylee E. Walter is a resident and citizen of Fort Wainwright, Alaska. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

271.     Plaintiff Kaylee E. Walter was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

272.     Plaintiff Emanuel Rashad Waters is a resident and citizen of Fayetteville, North Carolina. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work,

due to contamination on behalf of the defendants, and potential AFFF sources.

273.    Plaintiff Emanuel Rashad Waters was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

274.    Plaintiff Victoria Watson is a resident and citizen of Oswego, Illinois. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

275.    Plaintiff Victoria Watson was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

276.    Plaintiff John Watts is a resident and citizen of Forsyth, Georgia. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

277.    Plaintiff John Watts was diagnosed with thyroid disease as a result of exposure to Defendants' PFAS contamination.

278.    Plaintiff Dathern Weatherby is a resident and citizen of Danville, Alabama. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

279.    Plaintiff Dathern Weatherby was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

280.    Plaintiff Christopher A Wells is a resident and citizen of Anaconda, Montana. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

281.    Plaintiff Christopher A Wells was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

282.    Plaintiff Jeremiah Jacob Wertz is a resident and citizen of Wilmington, North Carolina. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

283.    Plaintiff Jeremiah Jacob Wertz was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

284.    Plaintiff Alvin Bryan Whisman is a resident and citizen of Pittsburg, Texas. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

285.    Plaintiff Alvin Bryan Whisman was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

286.    Plaintiff Darrell Cornelius White is a resident and citizen of Columbus, Georgia. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

287.    Plaintiff Darrell Cornelius White was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

288.    Plaintiff Albert Wiktorko is a resident and citizen of Ticonderoga, New York. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

289.    Plaintiff Albert Wiktorko was diagnosed with thyroid disease as a result of exposure to Defendants' PFAS contamination.

290.    Plaintiff Eugene Williams is a resident and citizen of Waycross, Georgia. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

291.    Plaintiff Eugene Williams was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

292.    Plaintiff Kaytrell T Williams is a resident and citizen of Opelousas, Louisiana. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

293.    Plaintiff Kaytrell T Williams was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

294.    Plaintiff Christopher Wyan Wilson is a resident and citizen of Greensboro, North Carolina. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

295.    Plaintiff Christopher Wyan Wilson was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

296.    Plaintiff Daniel Wilson is a resident and citizen of Brooten, Minnesota. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

297.    Plaintiff Daniel Wilson was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

298.    Plaintiff Thomas Woodall is a resident and citizen of Nashville, Tennessee. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to

contamination on behalf of the defendants, and potential AFFF sources.

299.    Plaintiff Thomas Woodall was diagnosed with thyroid disease as a result of exposure to Defendants' PFAS contamination.

300.    Plaintiff Rdell Worlds Jr. is a resident and citizen of Marianna, Florida. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

301.    Plaintiff Rdell Worlds Jr. was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

302.    Plaintiff Popotia R Wright is a resident and citizen of Moncks Corner, South Carolina. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

303.    Plaintiff Popotia R Wright was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

304.    Plaintiff Steven Douglas Wyro is a resident and citizen of Columbia Falls, Montana. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

305.    Plaintiff Steven Douglas Wyro was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

306.    Plaintiff Julio Yapias is a resident and citizen of Clarksville, Tennessee. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

307.    Plaintiff Julio Yapias was diagnosed with ulcerative colitis as a result of exposure to Defendants' PFAS contamination.

308.    Plaintiff Roland Zamora Sr is a resident and citizen of Clarksville, Tennessee. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

309.    Plaintiff Roland Zamora Sr was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

310.    Plaintiff Regino Zavala is a resident and citizen of Midvale, Utah. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

311.    Plaintiff Regino Zavala was diagnosed with testicular cancer as a result of exposure to Defendants' PFAS contamination.

312.    Defendant, 3M Company, f/k/a Minnesota Mining and Manufacturing Company, ("3M"), is a Delaware corporation and does business throughout the United States. 3M has its principal place of business at 3M Center, St. Paul, Minnesota 55133.

313.    3M designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

314.    Defendant AGC Chemicals Americas, Inc. ("AGC") is a Delaware corporation and does business

throughout the United States. AGC has its principal place of business at 55 E. Uwchlan Ave., Suite 201, Exton, Pennsylvania 19341.

315.    AGC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

316.    Defendant Amerex Corporation ("Amerex") is an Alabama corporation and does business throughout the United States. Amerex has its principal place of business at 7595 Gadsden Highway, Trussville, Alabama 35173.

317.    Amerex designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

318.    Defendant Archroma U.S. Inc. ("Archroma") is a North Carolina company and does business throughout the United States. Archroma has its principal place of business at 5435 77 Center Drive, #10 Charlotte, North Carolina 28217. Upon information and belief, Archroma was formed in 2013 as part of the acquisition of Clariant Corporation's Textile Chemicals, Paper Specialties and Emulsions business by SK Capital Partners.

319.    Archroma designed, marketed, developed, manufactured, distributed, released, trained users,

produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

320.    Defendant Arkema, Inc. ("Arkema") is a Pennsylvania corporation and does business throughout the United States. Arkema has its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Upon information and belief, assets of Arkema's fluorochemical business were purchased by Defendant Dupont in 2002.

321.    Arkema designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

322.    Defendant BASF Corporation ("BASF") is a Delaware corporation and does business throughout the United States. BASF has its principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932.

323.    BASF designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals

and/or products added to AFFF which contained PFAS for use in firefighting.

324.    Defendant Buckeye Fire Equipment Company ("Buckeye") is an Ohio corporation and does business throughout the United States. Buckeye has its principal place of business at 110 Kings Road, Mountain, North Carolina 28086.

325.    Buckeye designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

326.    Defendant Carrier Global Corporation ("Carrier") is a Delaware corporation and does business throughout the United States. Carrier has its principal place of business at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418. Upon information and belief, Carrier was formed in 2020 and is the parent company of Kidde-Fenwal, Inc., a manufacturer of AFFF.

327.    Carrier designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

328.    Defendant ChemDesign Products, Inc. ("ChemDesign") is a Texas corporation and does business throughout the United States. ChemDesign has its principal place of business at 2 Stanton Street, Marinette, Wisconsin 54143.

329.    ChemDesign designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

330.    Defendant Chemguard, Inc. ("Chemguard") is a Wisconsin corporation and does business throughout the United States. Chemguard has its principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

331.    Chemguard designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

332.    Defendant Chemicals, Inc. ("Chemicals") is a Texas corporation and does business throughout the United States. Chemicals has its principal place of business at 12321 Hatcherville Road, Baytown, Texas 77521.

333.    Chemicals designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying

chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

334.     Defendant Chemours Company FC, LLC ("Chemours FC"), is a Delaware corporation and does business throughout the United States. Chemours has its principal place of business at 1007 Market Street, Wilmington, Delaware 19899. Chemours FC is a subsidiary of The Chemours Company.

335.     Chemours FC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

336.     Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134210.  Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to, Chubb Fire & Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc.

337.     Chubb Fire designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

338.     Defendant Clariant Corporation ("Clariant") is a New York corporation and does business

throughout the United States. Clariant has its principal place of business at 4000 Monroe Road, Charlotte, North Carolina 28205.

339.     Clariant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

340.     Defendant Corteva, Inc. ("Corteva") is a Delaware Corporation that conducts business throughout the United States. Its principal place of business is Chestnut Run Plaza 735, Wilmington, Delaware 19805. Corteva is the successor-in-interest to Dupont Chemical Solutions Enterprise.

341.     Corteva designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

342.     Defendant Daikin America, Inc. ("Daikin") is a Delaware corporation and does business throughout the United States. Daikin has its principal place of business in Orangeburg, New York.

343.     Daikin designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users,

47

produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

344. Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation and does business throughout the United States. Deepwater's principal place of business is at 196122 E County Road 735, Woodward, Oklahoma 73801.

345. Deepwater designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

346. Defendant Du Pont de Nemours Inc. (f/k/a DowDuPont, Inc.) ("DowDuPont"), is a Delaware corporation and does business throughout the United States. DowDuPont, has its principal place of business at 1007 Market Street, Wilmington, Delaware 19899 and 2211 H.H. Dow Way, Midland, Michigan 48674. DowDupont was created in 2015 to transfer Chemours and DuPont liabilities for manufacturing and distributing flurosurfactants to AFFF manufacturers.

347. DowDuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

348. Defendant Dynax Corporation ("Dynax") is a New York corporation that conducts business

throughout the United States. Its principal place of business is 103 Fairview Park Drive, Elmsford, New York, 10523-1544.

349.    Dynax designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

350.    Defendant E. I. du Pont de Nemours and Company ("DuPont"), is a Delaware corporation and does business throughout the United States. DuPont has its principal place of business at 1007 Market Street, Wilmington, Delaware 19898.

351.    DuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

352.    Defendant Johnson Controls, Inc. ("Johnson Controls") is a Wisconsin corporation and does business throughout the United States. Johnson Controls has its principal place of business in Milwaukee Wisconsin.

353.    Johnson Controls designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed,

manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

354.    Defendant Kidde P.L.C., Inc. ("Kidde P.L.C.") is a foreign corporation organized and existing under the laws of the State of Delaware and does business throughout the United States. Kidde P.L.C. has its principal place of business at One Carrier Place, Farmington, Connecticut 06034. Upon information and belief, Kidde PLC was formerly known as Williams Holdings, Inc. and/or Williams US, Inc.

355.    Kidde P.L.C. designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

356.    Defendant Nation Ford Chemical Company ("Nation Ford") is a South Carolina company and does business throughout the United States. Nation Ford has its principal place of business at 2300 Banks Street, Fort Mill, South Carolina 29715.

357.    Nation Ford designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

358.    Defendant National Foam, Inc. ("National Foam") is a Delaware corporation and does business

throughout the United States. National Foam has its principal place of business at 141 Junny Road, Angier, North Carolina, 27501.

359.    National Foam designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

360.    Defendant Perimeter Solutions, LP ("Perimeter") is a Delaware corporation and does business throughout the United States. Perimeter has its principal place of business in Rancho Cucamonga, California.

361.    Perimeter designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

362.    Defendant The Chemours Company ("Chemours"), is a Delaware corporation and does business throughout the United States. Chemours has its principal place of business 1007 Market Street, Wilmington, Delaware 19898. Upon information and belief, Chemours was spun off from DuPont in 2015 to assume PFAS related liabilities.

363.    Chemours designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that

are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

364.    Defendant Tyco Fire Products, LP, as successor-in-interest to The Ansul Company ("Tyco"), is a Delaware limited partnership and does business throughout the United States. Tyco has its principal place of business at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19466. Tyco manufactured and currently manufactures the Ansul brand of products, including Ansul brand AFFF containing PFAS.

365.    Tyco is the successor in interest to the corporation formerly known as The Ansul Company ("Ansul"). At all times relevant, Tyco/Ansul designed, marketed, developed, manufactured, distributed released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

366.    Defendant United Technologies Corporation ("United Technologies") is a foreign corporation organized and existing under the laws of the State of Delaware and does business throughout the United States. United Technologies has its principal place of business at 8 Farm Springs Road, Farmington, Connecticut 06032.

367.    United Technologies designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold

and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

368.    Defendant UTC Fire & Security Americas Corporation, Inc.  (f/k/a GE Interlogix, Inc.) ("UTC") is a North Carolina corporation and does business throughout the United States. UTC has principal place of business at 3211 Progress Drive, Lincolnton, North Carolina 28092. Upon information and belief, Kidde-Fenwal, Inc. is part of the UTC Climate Control & Security unit of United Technologies Corporation.

369.    UTC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

370.    When reference is made in this Complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of Defendants, and did so while acting within the scope of their duties, employment or agency.

371.    The term "AFFF Defendant" or "AFFF Defendants" refers to all Defendants named herein who designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this complaint, jointly and severally, unless otherwise stated.

372.    The term "DuPont Defendants" or "DuPont Defendants refers to Defendants Chemours Company FC, LLC, Du Pont de Nemours INC., E.I. DuPont de Nemours and Company, & The Chemours Company.

## FACTUAL ALLEGATIONS

373.    Aqueous Film-Forming Foam ("AFFF") is a combination of chemicals used to extinguish hydrocarbon fuel-based fires.

374.    AFFF-containing fluorinated surfactants have better firefighting capabilities than water due to their surfactant-tension lowering properties which allow the compound(s) to extinguish fire by smothering, ultimately starving it of oxygen.

375.    AFFF is a Class-B firefighting foam. It is mixed with water and used to extinguish fires that are difficult to fight, particularly those that involve petroleum or other flammable liquids.

376.    AFFF Defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled AFFF containing toxic PFAS or underlying PFAS containing chemicals used in AFFF production that were used by entities around the country, including military, county, and municipal firefighting departments.

377.    AFFF Defendants have each designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, sold, and/or otherwise handled and/or used AFFF containing PFAS, in such a way as to cause the contamination of Plaintiffs' blood and/or body with PFAS, and the resultant biopersistence and bioaccumulation of such PFAS in the blood and/or body of Plaintiffs.

378.    AFFF was introduced commercially in the mid-1960s and rapidly became the primary firefighting foam in the United States and in other parts of the world. It contains PFAS, which are highly fluorinated synthetic chemical compounds whose family include PFOS and PFOA.

379.    PFAS are a family of chemical compounds containing fluorine and carbon atoms.

380.    PFAS have been used for decades in the manufacture of AFFF. The PFAS family of chemicals are entirely human-made and do not naturally occur or otherwise exist.

381.    Prior to commercial development and large-scale manufacture and use of AFFF containing PFAS, no such PFAS had been found or detected in human blood.

    A.    **AFFF / PFAS Hazardous Effects on Humans**

382.    AFFF and its components are associated with a wide variety of adverse health effects in humans.

383.    Exposure to AFFF Defendants' products has been linked to serious medical conditions including, but not limited to, kidney cancer, testicular cancer, liver cancer, testicular tumors, pancreatic cancer, prostate cancer, leukemia, lymphoma, bladder cancer, thyroid disease and infertility.

384.    By at least the end of the 1960s, animal toxicity testing performed by some Defendants manufacturing and/or using PFAS indicated that exposure to such materials, including at least PFOA, resulted in various adverse health effects among multiple species of laboratory animals, including toxic effects to the liver, testes, adrenals, and other organs and bodily systems.

385.    By at least the end of the 1960s, additional research and testing performed by some

Defendants manufacturing and/or using PFAS indicated that such materials, including at least PFOA, because of their unique chemical structure, were resistant to environmental degradation and would persist in the environment essentially unaltered if allowed to enter the environment.

386.    By at least the end of the 1970s, additional research and testing performed by some Defendants manufacturing and/or using PFAS indicated that one or more such materials, including at least PFOA and PFOS, because of their unique chemical structure, would bind to proteins in the blood of animals and humans exposed to such materials where such materials would remain and persist over long periods of time and would accumulate in the blood/body of the exposed individuals with each additional exposure.

387.    By at least the end of the 1980s, additional research and testing performed by some Defendants manufacturing and/or using PFAS indicated that at least one such PFAS, PFOA, had caused Leydig cell (testicular) tumors in a chronic cancer study in rats, resulting in at least one such Defendant, DuPont, classifying such PFAS internally as a confirmed animal carcinogen and possible human carcinogen.

388.    It was understood by AFFF Defendants by at least the end of the 1980s that a chemical that caused cancer in animal studies must be presumed to present a cancer risk to humans, unless the precise mechanism of action by which the tumors were caused was known and would not occur in humans.

389.    By at least the end of the 1980s, scientists had not determined the precise mechanism of action by which any PFAS caused tumors. Therefore, scientific principles of carcinogenesis classification mandated AFFF Defendants presume any such PFAS material that caused tumors in animal studies could present a potential cancer risk to exposed humans.

390.    By at least the end of the 1980s, additional research and testing performed by some Defendants manufacturing and/or using PFAS, including at least DuPont, indicated that elevated incidence of certain cancers and other adverse health effects, including elevated liver enzymes and birth defects, had been observed among workers exposed to such materials, including at least PFOA, but such data was not published, provided to governmental entities as required by law, or otherwise publicly disclosed at the time.

391.    By at least the end of the 1980s, some Defendants, including at least 3M and DuPont, understood that, not only did PFAS, including at least PFOA and PFOS, get into and persist and accumulate in the human blood and in the human body, but that once in the human body and blood, particularly the longer-chain PFAS, such as PFOS and PFOA, had a long half-life. Meaning that it would take a very long time before even half of the material would start to be eliminated, which allowed increasing levels of the chemicals to build up and accumulate in the blood and/or body of exposed individuals over time, particularly if any level of exposure continued.

392.    By at least the end of the 1990s, additional research and testing performed by some Defendants manufacturing and/or using PFAS, including at least 3M and DuPont, indicated that at least one such PFAS, PFOA, had caused a triad of tumors (Leydig cell (testicular), liver, and pancreatic) in a second chronic cancer study in rats.

393.    By at least the end of the 1990s, the precise mechanism(s) of action by which any PFAS caused each of the tumors found in animal studies had still not been identified, mandating that AFFF Defendants continue to presume that any such PFAS that caused such tumors in animal studies could present a potential cancer risk to exposed humans.

394.    By at least 2010, additional research and testing performed by some Defendants manufacturing and/or using PFAS, including at least 3M and DuPont, revealed multiple potential adverse health impacts among workers exposed to such PFAS, including at least PFOA, such as increased cancer incidence, hormone changes, lipid changes, and thyroid and liver impacts.

395.    When the United States Environmental Protection Agency ("USEPA") and other state and local public health agencies and officials first began learning of PFAS exposure in the United States and potential associated adverse health effects, AFFF Defendants repeatedly assured and represented to such entities and the public that such exposure presented no risk of harm and were of no significance.

396.    After the USEPA and other entities began asking Defendants to stop manufacturing and/or using certain PFAS, AFFF Defendants began manufacturing and/or using and/or began making and/or using more of certain other and/or "new" PFAS, including PFAS materials with six or fewer carbons, such as GenX (collectively "Short-Chain PFAS").

397.    AFFF Defendants manufacturing and/or using Short-Chain PFAS, including at least DuPont and 3M, are aware that one or more such Short-Chain PFAS materials also have been found in human blood.

398.    By at least the mid-2010s, AFFF Defendants, including at least DuPont and Chemours, were aware that at least one Short-Chain PFAS had been found to cause the same triad of tumors (Leydig (testicular), liver, and pancreatic) in a chronic rat cancer study as had been found in a chronic rat cancer study with a non-Short-Chain PFAS.

399.    Research and testing performed by and/or on behalf of AFFF Defendants making and/or using Short-Chain PFAS indicates that such Short-Chain PFAS materials present the same, similar, and/or additional risks to human health as had been found in research on other PFAS materials, including cancer risk.

400.    Nevertheless, AFFF Defendants repeatedly assured and represented to governmental entities and the public (and continue to do so) that the presence of PFAS, including Short-Chain PFAS, in human blood at the levels found within the United States present no risk of harm and is of no legal, toxicological, or medical significance of any kind.

401.    At all relevant times, AFFF Defendants, individually and/or collectively, possessed the resources and ability but have intentionally, purposefully, recklessly, and/or negligently chosen not to fund or sponsor any study, investigation, testing, and/or other research of any kind of the nature that AFFF Defendants claim is necessary to confirm and/or prove that the presence of any one and/or combination of PFAS in human blood causes any disease and/or adverse health impact of any kind in humans, presents any risk of harm to humans, and/or is of any legal, toxicological, or medical significance to humans, according to standards AFFF Defendants deem acceptable.

402.    Even after an independent science panel, known as the "C8 Science Panel," publicly announced in the 2010s that human exposure to 0.05 parts per billion or more of one PFAS, PFOA, had "probable links" with certain human diseases, including kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, preeclampsia, and medically-diagnosed high cholesterol, AFFF Defendants repeatedly assured and represented to governmental entities, their customers, and the public (and continue to do so) that the presence of PFAS in human blood at

the levels found within the United States presents no risk of harm and is of no legal, toxicological, or medical significance of any kind, and have represented to and assured such governmental entities, their customers, and the public (and continue to do so) that the work of the independent C8 Science Panel was inadequate.

403.    At all relevant times, AFFF Defendants shared and/or should have shared among themselves all relevant information relating to the presence, biopersistence, and bioaccumulation of PFAS in human blood and associated toxicological, epidemiological, and/or other adverse effects and/or risks.

404.    As of the present date, blood serum testing and analysis by AFFF Defendants, independent scientific researchers, and/or government entities has confirmed that PFAS materials are clinically demonstrably present in approximately 99% of the current population of the United States.

405.    There is no naturally-occurring "background," normal, and/or acceptable level or rate of any PFAS in human blood, as all PFAS detected and/or present in human blood is present and/or detectable in such blood as a direct and proximate result of the acts and/or omissions of Defendants.

406.    At all relevant times, Defendants, through their acts and/or omissions, controlled, minimized, trivialized, manipulated, and/or otherwise influenced the information that was published in peer-review journals, released by any governmental entity, and/or otherwise made available to the public relating to PFAS in human blood and any alleged adverse impacts and/or risks associated therewith, effectively preventing Plaintiffs from discovering the existence and extent of any injuries/harm as alleged herein.

407.    At all relevant times, Defendants, through their acts and/or omissions, took steps to attack, challenge, discredit, and/or otherwise undermine any scientific studies, findings, statements, and/or other information that proposed, alleged, suggested, or even implied any potential adverse health effects or risks and/or any other fact of any legal, toxicological, or medical significance associated with the presence of PFAS in human blood.

408.    At all relevant times, Defendants, through their acts and/or omissions, concealed and/or withheld information from their customers, governmental entities, and the public that would have properly and fully alerted Plaintiffs to the legal, toxicological, medical, or other significance and/or risk from having any PFAS material in Plaintiffs' blood.

409.    At all relevant times, Defendants encouraged the continued and even further increased use of PFAS by their customers and others, including but not limited to the manufacture, use, and release, of AFFF containing PFAS and/or emergency responder protection gear or equipment coated with materials made with or containing PFAS, and tried to encourage and foster the increased and further use of PFAS in connection with as many products/uses/and applications as possible, despite knowledge of the toxicity, persistence, and bioaccumulation concerns associated with such activities.

410.    To this day, Defendants deny that the presence of any PFAS in human blood, at any level, is an injury or presents any harm or risk of harm of any kind, or is otherwise of any legal, toxicological, or medical significance.

411.    To this day, Defendants deny that any scientific study, research, testing, or other work of any kind has been performed that is sufficient to suggest to the public that the presence of any PFAS material in human blood, at any level, is of any legal, toxicological, medical, or other

significance.

412.    Defendants, to this day, affirmatively assert and represent to governmental entities, their customers, and the public that there is no evidence that any of the PFAS found in human blood across the United States causes any health impacts or is sufficient to generate an increased risk of future disease sufficient to warrant diagnostic medical testing, often referring to existing studies or data as including too few participants or too few cases or incidents of disease to draw any scientifically credible or statistically significant conclusions.

413.    Defendants were and/or should have been aware, knew and/or should have known, and/or foresaw or should have foreseen that their design, marketing, development, manufacture, distribution, release, training and response of users, production of instructional materials, sale and/or other handling and/or use of AFFF containing PFAS would result in the contamination of the blood and/or body of Plaintiffs with PFAS, and the biopersistence and bioaccumulation of such PFAS in their blood and/or body.

414.    Defendants were and /or should have been aware, or knew and/or should have known, and/or foresaw or should have foreseen that allowing PFAS to contaminate the blood and/or body of Plaintiffs would cause injury, irreparable harm, and/or unacceptable risk of such injury and/or irreparable harm to Plaintiffs.

415.    Defendants did not seek or obtain permission or consent from Plaintiffs before engaging in such acts and/or omissions that caused, allowed, and/or otherwise resulted in Plaintiffs' exposure to AFFF and the contamination of Plaintiffs' blood and/or body with PFAS materials, and resulting biopersistence and bioaccumulation of such PFAS in their blood and/or body.

**B.**    **Defendants' History of Manufacturing and Selling AFFF**

416.    3M began producing PFOS and PFOA by electrochemical fluorination in the 1940s.  In the 1960s, 3M used its fluorination process to develop AFFF.

417.    3M manufactured, marketed, and sold AFFF from the 1960s to the early 2000s.

418.    National Foam and Tyco/Ansul began to manufacture, market, and sell AFFF in the 1970s.

419.    Buckeye began to manufacture, market, and sell AFFF in the 2000s.

420.    In 2000, 3M announced it was phasing out its manufacture of PFOS, PFOA, and related products, including AFFF. 3M, in its press release announcing the phase out, stated "our products are safe," and that 3M's decision was "based on [its] principles of responsible environment management."  3M further stated that "the presence of these materials at [] very low levels does not pose a human health or environmental risk."  In communications with the EPA at that time, 3M also stated that it had "concluded that…other business opportunities were more deserving of the company's energies and attention…"

421.    Following 3M's exit from the AFFF market, the remaining AFFF Defendants continued to manufacture and sell AFFF that contained PFAS and/or its precursors.

422.    AFFF Defendants knew their customers warehoused large stockpiles of AFFF. In fact, AFFF Defendants marketed their AFFF products by touting its shelf-life. Even after AFFF Defendants fully understood the toxicity of PFAS, and their impacts to the health of humans following exposure, AFFF Defendants concealed the true nature of PFAS. While AFFF Defendants phased out production or transitioned to other formulas, they did not instruct their customers that they should not use AFFF that contained PFAS and/or their precursors. AFFF Defendants further did not act to get their harmful

products off the market.

423.    AFFF Defendants did not warn public entities, firefighter trainees who they knew would foreseeably come into contact with their AFFF products, or firefighters employed by either civilian and/or military employers that use of and/or exposure to AFFF Defendants' products containing PFAS and/or its precursors would pose a danger to human health.

424.    The Plaintiffs were exposed to PFAS contamination, directly through contaminated drinking water.

425.    The Plaintiffs were never informed that the water was dangerous. Nor were the Plaintiffs warned about the known health risks associated with Defendants' PFAS chemicals.

426.    The Plaintiffs never received instruction to avoid drinking the water.

427.    Defendants have known of the health hazards associated with PFAS and/or its compounds for decades and that in their intended and/or common use would harm human health.

428.    Information regarding PFAS and its compounds were readily accessible to the Defendants for decades because each is an expert in the field of PFAS manufacturing and/or the materials needed to manufacture PFAS, and each has detailed information and understanding about the chemical compounds that form PFAS products.

429.    Defendants' manufacture, storage, and release of PFAS resulted in the Plaintiffs and other individuals who came in contact with the chemicals to develop cancer.

430.    The Defendants, through their manufacturing, storing, and inappropriate releases of PFAS, knew, foresaw, and/or should have known and/or foreseen that the Plaintiffs and those similarly situated would be harmed.

431.    The Defendants' products were unreasonably dangerous, and the Defendants failed to warn of this danger.

## CAUSES OF ACTION

## COUNT I - NEGLIGENCE

432.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

433.    Negligence may exist both as an omission as well as an affirmative act. A claim of negligence allows for the recovery for an injury that was proximately caused by another's violation of a duty of reasonable care.

434.    Here, the Defendants, as owners and operators of business(es) at sites that managed, stored, used and disposed of toxic contaminants and solvents, owed Plaintiffs a cognizable duty to exercise reasonable care in the storage, transportation, and disposal of toxic chemicals including but not limited to the Contaminants, and in the maintenance of their tools and equipment used for such acts.

435.    Defendants breached their duty of reasonable care which a reasonably prudent person should use under the circumstances by causing and/or allowing and/or failing to prevent the releases of PFAS chemical into the water in and around the sites and the surrounding neighborhoods, where they caused toxic exposure to Plaintiffs and the contamination of their homes.

436.    The releases of PFAS and PFAS byproducts into groundwater and drinking water is the proximate and legal cause of the injuries suffered by the Plaintiffs to their health and wellbeing and to their properties and the adjacent properties.

437.    Defendants breached that duty by failing to timely notify the Plaintiffs of the releases of

65

PFAS.

438.    As a direct and proximate result of Defendants' negligence, the Plaintiffs have been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including, but not limited to medical expenses, lost income, and/or other damages.

439.    Defendants breached their duty by failing to act reasonably to remediate, contain, and eliminate the contamination before it injured the Plaintiffs.

440.    Defendants had a legal duty to properly remediate the contamination from their activities at the sites and had full knowledge of the extent of the contamination and the threat it poses to human health and safety.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## <u>COUNT II – BATTERY</u>

441.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

442.    At all relevant times, Defendants possessed knowledge that the PFAS which they designed, engineered, manufactured, fabricated, sold, handled, released, trained users on, produced instructional materials for, used, and/or distributed were bio- persistent, bio-accumulative, toxic, potentially carcinogenic, and/or otherwise harmful/injurious and that their continued manufacture, use, sale, handling, release, and distribution would result in Plaintiffs having PFAS in Plaintiffs' blood, and the biopersistence and bioaccumulation of such PFAS in Plaintiffs' blood.

443.    However, despite possessing such knowledge, Defendants knowingly, purposefully, and/or intentionally continued to engage in such acts and/or omissions, including but not limited to all such acts and/or omissions described in this Complaint, that continued to result in Plaintiffs accumulating PFAS in Plaintiffs' blood and/or body, and such PFAS persisting and accumulating in Plaintiffs' blood and/or body.

444.    Defendants did not seek or obtain permission or consent from Plaintiffs to put or allow PFAS materials into Plaintiffs' blood and/or body, or to persist in and/or accumulate in Plaintiffs' blood and/or body.

445.    Entry into, persistence in, and accumulation of such PFAS in Plaintiffs' body and/or blood without permission or consent is an unlawful and harmful and/or offensive physical invasion and/or contact with Plaintiffs' person and unreasonably interferes with Plaintiffs' rightful use and possession of Plaintiffs' blood and/or body.

446.    At all relevant times, the PFAS present in the blood of Plaintiffs originated from Defendants' acts and/or omissions.

447.    Defendants continues to knowingly, intentionally, and/or purposefully engage in acts and/or omissions that result in the unlawful and unconsented-to physical invasion and/or contact with Plaintiffs that resulted in persisting and accumulating levels of PFAS in Plaintiffs' blood.

448.    Plaintiffs, and any reasonable person, would find the contact at issue harmful and/or offensive.

449.    Defendants acted intentionally with the knowledge and/or belief that the contact, presence and/or invasion of PFAS with, onto and/or into Plaintiffs' blood serum, including its persistence and accumulation in such serum, was substantially certain to result from those very acts and/or omissions.

450.    Defendants' intentional acts and/or omissions resulted directly and/or indirectly in harmful contact with Plaintiffs' blood and/or body.

451.    The continued presence, persistence, and accumulation of PFAS in the blood and/or body of Plaintiffs is offensive, unreasonable, and/or harmful, and thereby constitutes a battery.

452.    The presence of PFAS in the blood and/or body of Plaintiffs altered the structure and/or function of such blood and/or body parts and resulted in cancer.

453.    As a direct and proximate result of the foregoing acts and omissions, Plaintiffs suffered physical injury for which Defendants are therefore liable.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT III – ABNORMALLY DANGEROUS ACTIVITY

454.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

455.    Activities such as the disposal of hazardous chemical wastes as is the case herein constitutes an abnormally dangerous activity for which strict liability will apply.

456.    Defendants' aforesaid failure to employ reasonable care which a reasonably prudent person should use under the circumstances by storing, transporting, disposing of, or otherwise handling toxic substances, including PFAS, constitutes ultra-hazardous and abnormally dangerous activities involving ultra-hazardous, abnormally dangerous substances.

457.    Defendants allowed or caused these ultra-hazardous and abnormally dangerous

substances to be released into the surrounding land, groundwater, and river, and in doing so, failed to warn Plaintiffs of the dangerous condition that was caused thereby.

458.    The risks posed by such activities outweigh any value associated with the same. As the result of said ultra-hazardous and abnormally dangerous activities, Plaintiffs have suffered damages and imminent, substantial, and impending harm to their health, families, and home values. Plaintiffs have expended and will be forced to expend significant resources to address their injuries caused by the contamination indefinitely for years and decades into the future.

459.    By reason of the foregoing, Defendants are strictly liable in tort for the damages sustained by Plaintiffs.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT IV – FRAUDULENT CONCEALMENT

460.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

461.    Throughout the relevant time period, Defendants knew that PFAS was defective and unreasonably unsafe for their intended purpose.

462.    Defendants fraudulently concealed from and/or failed to disclose to or warn the Plaintiffs, and the public that PFAS was defective, unsafe, and unfit for the purposes intended.

463.    Defendants were under a duty to the Plaintiffs and the public to disclose and warn of the defective and harmful nature of PFAS because:

a) Defendants were in a superior position to know the true quality, safety and efficacy of the Defendants' products;

b) Defendants knowingly made false claims about the safety and quality of the Defendants' product in documents and marketing materials; and

c) Defendants fraudulently and affirmatively concealed the defective nature of the Defendants' products from the Plaintiffs.

464.    The facts concealed and/or not disclosed by Defendants to the Plaintiffs were material facts that a reasonable person would have considered to be important.

465.    Defendants intentionally concealed and/or failed to disclose the true defective nature of PFAS so that the Plaintiffs would use the Defendants' products, the Plaintiffs justifiably acted or relied upon, to Plaintiffs' detriment, the concealed and/or non-disclosed facts.

466.    Defendants, by concealment or other action, intentionally prevented the Plaintiffs from acquiring material information regarding the lack of safety and effectiveness of PFAS and are subject to the same liability to the Plaintiffs for Plaintiffs' pecuniary losses, as though Defendants had stated the non-existence of such material information regarding PFAS's lack of safety and effectiveness and dangers and defects, and as though Defendants had affirmatively stated the non- existence of such matters that the Plaintiffs was thus prevented from discovering the truth.

467.    Defendants therefore have liability for fraudulent concealment under all applicable laws, including, inter alia, Restatement (Second) of Torts §550 (1977).

468.    As a proximate result of Defendants' conduct, the Plaintiffs have been injured, and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## **COUNT V – NUISANCE**

469.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

470.    Under a cause of action for private nuisance, Parties may be subject to liability for environmental contamination if their conduct invades another's private use and enjoyment of land and if such invasion is: 1) intentional and unreasonable; 2) negligent or reckless; or 3) actionable under the rules governing liability for abnormally dangerous conditions or activities.

471.    Defendants own, occupy, control and/or still own, occupy and control their real property in such a way as to create and/or maintain and continue a dangerous and/or hazardous condition.

472.    At all times mentioned herein, Defendants had knowledge and/or notice of the dangerous condition that the PFAS presented and failed to take reasonable acts to cleanup, correct, or remediate that condition.

473.    Additionally, Defendants owed a duty to Plaintiffs to take reasonable action to eliminate, correct, or remedy any dangerous that was reasonably foreseeable to injure Plaintiffs and of which they had knowledge and/or notice.

474.    Defendants breached these duties by negligently, willfully, and/or wantonly creating a dangerous condition on their property by allowing massive quantities toxic PFAS to be spilled, disposed of, or otherwise released into the ground, soil, and groundwater. This dangerous

71

condition is reasonably foreseeable to cause injury and damage to Plaintiffs due to the size and nature of the releases of the contaminants.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT VI – WANTONNESS

475.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

476.    Defendants and their employees, agents, officers, and representatives owed a duty of care to everyone in the surrounding communities, including Plaintiffs.

477.    Defendants breached the duty of care owed to the Plaintiffs.

478.    The actions of Defendants and their employees, agents, officers, and representatives were willful and wanton and exhibited a reckless disregard for the life, health, and safety of those exposed to Defendants' PFAS, including Plaintiffs.

479.    As a proximate and foreseeable consequent of the actions of Defendants, Plaintiffs were exposed to unreasonably dangerous toxic PFAS, which caused Plaintiffs' injuries.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT VII – STRICT LIABILITY (STATUTORY)

480.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

481.    Plaintiffs asserts any and all remedies available under statutory causes of action from Plaintiffs' states for strict liability against each Defendant.

482.    The Defendants were engaged in designing, manufacturing, marketing, selling, and distribution of PFAS products.

483.    The PFAS products were in a defective condition and unreasonably dangerous to users and/or consumers when designed, manufactured, marketed, sold, and/or distributed to the public by the Defendants.

484.    As a direct and proximate result of the Defendants products' aforementioned defects, the Plaintiffs have been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including, but not limited to medical expenses, lost income, and other damages.

485.    The Defendants are strictly liable in tort to the Plaintiffs for their wrongful conduct.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT VIII – STRICT LIABILITY (RESTATEMENT)

486.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

487.    The Plaintiffs bring strict product liability claims under the common law, Section 402A

of the Restatement of Torts (Second), and/or Restatement of Torts (Third) against Defendants.

488.    As designed, manufactured, marketed, tested, assembled, equipped, distributed and/or sold by the Defendants the PFAS product was in a defective and unreasonably dangerous condition when put to reasonably anticipated use to foreseeable consumers and users, including the Plaintiffs.

489.    The Defendants had available reasonable alternative designs which would have made the PFAS product safer and would have most likely prevented the injuries and damages to the Plaintiffs, thus violating state law and the Restatement of Torts.

490.    The Defendants failed to properly and adequately warn and instruct the Plaintiffs as to the proper safety and use of the Defendants' product.

491.    The Defendants failed to properly and adequately warn and instruct the Plaintiffs regarding the inadequate research and testing of the product.

492.    The Defendants' products are inherently dangerous and defective, unfit and unsafe for their intended and reasonably foreseeable uses, and do not meet or perform to the expectations.

493.    As a proximate result of the Defendants' design, manufacture, marketing, sale, and distribution of the products, the Plaintiffs have been injured and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, and economic damages.

494.    By reason of the foregoing, the Defendants are strictly liable for the injuries and damages suffered by the Plaintiffs, caused by these defects in the PFAS products.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual,

compensatory, consequential, and punitive damages, together with the costs of this action, and for

such other and further relief as this Court may deem fit, just, and proper.

## COUNT IX – INADEQUATE WARNING

495.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding

paragraphs of this Complaint as if restated in full herein.

496.    Defendants knew or should have known:

a) exposure to products containing PFAS was hazardous to human health;

b) the manner in which they were designing, marketing, developing, manufacturing, distributing, releasing, training, instructing, promoting, and selling products containing PFAS was hazardous to human health; and

c) the manner in which they were designing, marketing, developing, manufacturing, marketing, distributing, releasing, training, instructing, promotion and selling products containing PFAS would result in the contamination of Plaintiffs' blood and/or body as a result of exposure.

497.    Defendants had a duty to warn of the hazards associated with products containing PFAS

entering the blood and/or body of Plaintiffs because they knew of the dangerous, hazardous, and

toxic properties of products containing PFAS. Defendants failed to provide sufficient warning

to purchasers that the use of their PFAS products would cause PFAS to be released and cause

the exposure and bioaccumulation of these toxic chemicals in the blood and/or body of Plaintiffs.

498.    Adequate instructions and warnings on the products containing PFAS could have

reduced or avoided these foreseeable risks of harm and injury to Plaintiffs. If Defendants

provided adequate warnings:

a) Plaintiffs could have and would have taken measures to avoid or lessen exposure; and

b) end users and governments could have taken steps to reduce or prevent the release of PFASs into the blood and/or body of Plaintiffs. Defendants' failure to warn was a direct and proximate cause of Plaintiffs' injuries from PFAS that came from the use, storage, and

disposal of products containing PFAS. Crucially, Defendants' failure to provide adequate and sufficient warnings for the products containing PFAS they designed, marketed, manufactured, distributed, released, promoted, and sold renders the PFAS products as defective products.

499.    Defendants were negligent in their failure to provide Plaintiffs with adequate warnings or instruction that the use of their PFAS products would cause PFAS to be released into the blood and/or body of Plaintiffs. As a result of Defendants' conduct and the resulting contamination, Plaintiffs suffered severe personal injuries by exposure to products containing PFAS.

500.    Defendants' negligent failure to warn directly and proximately caused the harm to and damages suffered by Plaintiffs.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT X  -  FRAUDULENT TRANSFER, 6 Del. C. § 1304
## (DUPONT DEFENDANTS)

501.    Plaintiffs reallege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated herein.

502.    Under Delaware Code Title 6, § 1304:

503.    (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

504.    (1) With actual intent to hinder, delay or defraud any creditor of the debtor; or

505.    (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

506.    a. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

507.    b Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

508.    The Plaintiffs are a "Creditor" possessing "Claims" against the DuPont Defendants as those terms are defined in Delaware Code Title 6, § 1301.

509.    The DuPont Defendants have acted with actual intent to hinder, delay, and defraud DuPont's creditors.

510.    Assets and liabilities were transferred between the DuPont Defendants, whereby certain DuPont Defendants did not receive a reasonably equivalent value in exchange for the transfer and they were engaged in or about to engage in a business for which the remaining assets were unreasonably small and/or they intended to incur or reasonably should have believed that they would incur debts beyond their ability to pay as the debts became due.

511.    On information and belief, the DuPont Defendants engaged in a complicated restructuring of DuPont for the purpose of shielding assets from creditors such as the Plaintiffs, with claims related to PFAS contamination.

512.    On information and belief, at the tiFme of this restructuring, DuPont knew that its liabilities related to PFAS were likely in the billions of dollars.

513.    In the initial step of restructuring, DuPont formed Chemours in 2015 as a wholly owned subsidiary. In July 2015, DuPont spun off Chemours, transferring DuPont's Performance Chemicals Unit

along with a vast amount of environmental liabilities – including all those related to PFAS. As part of the transfer, Chemours transferred valuable assets to DuPont, including a $3.9 billion dividend to DuPont stockholders, for which Chemours incurred additional debt to pay.

514.    On information and belief, the Chemours spin-off was not bargained at arm's length. At the time of the spin off, Chemours had a separate board, but was controlled by DuPont employees.

515.    On information and belief, DuPont transferred to Chemours a disproportionately small allocation of assets to cover debts and liabilities. Dupont transferred less than 20% of its business line, but over 66% of its environmental liabilities and 90% of DuPont's pending litigation. These liabilities were taken on by Chemours in addition to the $3.9 billion in debt it assumed to pay a dividend to DuPont's shareholders. As a result, Chemours did not receive reasonably equivalent value in exchange for the transfer of debts and obligations from DuPont.

516.    In its valuation, DuPont purposefully undervalued the potential maximum liability from the PFAS liabilities it transferred to Chemours. At the time of the spin-off, DuPont had been sued threatened with lawsuits, and had knowledge of forthcoming litigation regarding DuPont's liabilities for damages and injuries from the manufacture, sale, and worldwide use of PFAS-containing products. DuPont and Chemours knew or should have known that Chemours would incur debts beyond its ability to pay as they came due.

517.    In further restructuring, DuPont sought to further protect its assets from PFAS liabilities by first merging itself with Dow and then separating its now comingled assets among three newly created companies: DowDuPont, Inc. ("DowDuPont") (which later became New DuPont); Dow, Inc. ("New Dow"), and Corteva.

518.    As a result of the merger, Dow and DuPont became wholly owned subsidiaries of DowDupont. On information and belief, after the merger, DowDupont underwent a hidden internal reorganization

with the net effect being the transfer of a substantial portion of its valuable assets to DowDupont for less than the assets were worth. On information and belief, the transactions were intended to frustrate and hinder creditors with claims against DuPont, including with respect to PFAS liabilities.

519.    As a result of this internal organization, all of Dow and DuPont's assets were reshuffled into three divisions: the Agriculture Business, the Specialty Products Business, and the Material Sciences Business.

520.    On June 1, 2019, the DuPont Defendants completed the final step of the restructuring by spinning off two newly publicly traded entities, Corteva and New Dow. Generally, the assets related to the Agriculture Business division were allocated to Corteva; assets related to the Material Science Business were allocated to New Dow; and the assets related to the Specialty Products Business remained with DowDupont, which then became New DuPont. DuPont became a wholly owned subsidiary of Corteva.

521.    On information and belief, Corteva and New DuPont assumed responsibility for some of DuPont's historic PFAS liabilities.

522.    On information and belief, during the restructuring, DuPont's assets were transferred to Corteva and New DuPont for far less than their actual value. At the end of these transactions, DuPont divested approximately half of its tangible assets, totaling roughly $20 billion.

523.    The net result of the restructuring was to move DuPont's extensive PFAS liabilities to an underfunded company, Chemours, and to further shield DuPont's extensive assets by merging them with Dow's assets and then transferring them to Corteva and New DuPont for far less than their value.

524.    Plaintiffs have been harmed by these transactions, which were designed to shield assets from creditors such as the Plaintiffs, which have been damaged by DuPont's conduct.

525.    Plaintiffs are entitled to void these transactions and to recover property or value transferred under

6 Del. C. § 1307.

## TOLLING OF THE STATUTE OF LIMITATIONS

### Discovery Rule Tolling

526.    Plaintiffs had no way of knowing about the risk of serious injury associated with the use of and exposure to PFAS until very recently.

527.    Within the time period of any applicable statute of limitations, Plaintiffs could not have discovered, through the exercise of reasonable diligence, that exposure to PFAS is harmful to human health.

528.    Plaintiffs did not discover and did not know of facts that would cause a reasonable person to suspect the risk associated with the use of and exposure to PFAS; nor would a reasonable and diligent investigation by Plaintiffs have disclosed that PFAS could cause personal injury.

529.    For these reasons, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiffs' claims.

### Fraudulent Concealment Tolling

530.    All applicable statute of limitations have also been tolled by Defendants knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

531.    Instead of disclosing critical safety information regarding PFAS, Defendants have consistently and falsely represented the safety of PFAS and PFAS containing products.

532.    This fraudulent concealment continues through present day.

533.    Due to this fraudulent concealment, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiffs' claims.

**Estoppel**

534.    Defendants were under a continuous duty to consumer, end users, and other persons coming into contact with their products, including Plaintiffs, to accurately provide safety information concerning its products and the risk associated with the use of and exposure to PFAS.

535.    Instead, Defendants knowingly, affirmatively, and actively concealed safety information concerning PFAS and the serious risks associated with the use of and exposure to PFAS.

536.    Based on the foregoing, Defendants are estopped from relying on any statute of limitations in defense of this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgments against all Defendants, jointly and severally, on each of the above-referenced claims and Causes of Action as follows:

Awarding compensatory damages to Plaintiffs for past and future damages, including but not limited, to pain and suffering for severe and permanent personal injuries sustained by the Plaintiffs, health care costs, medical monitoring, together with interest and costs as provided by law;

Punitive and/or exemplary damages for the wanton, willful, fraudulent, and/or reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the Plaintiffs and of the general public and to the Plaintiffs in an amount sufficient

to punish Defendants and deter future similar conduct;

Awarding Plaintiffs' attorneys' fees;

Awarding Plaintiffs the costs of these proceedings; and

Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

The Plaintiffs hereby demand a trial by jury.

Respectfully Submitted,

**ENVIRONMENTAL LITIGATION GROUP, P.C.**
*/s/ Gregory A. Cade*
Gregory A. Cade
Gary A. Anderson
Kevin B. McKie
Yahn E. Olson
ENVIRONMENTAL LITIGATION GROUP, P.C.
2160 Highland Avenue South
Birmingham, AL 35205
Telephone: 205-328-9200
Facsimile: 205-328-9456

**SERVE THE DEFENDANTS AT THE FOLLOWING ADDRESSES BY CERTIFIED MAIL:**

3M COMPANY
c/o Corporation Service Company
251 Little Falls Drive
Wilmington, New Castle, DE 19808